## In re AMENT.

[Cite as *In re Ament* (2001), 142 Ohio App.3d 302.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2000–09–076.

Decided April 23, 2001.

*Donald W. White,* Clermont County Prosecuting Attorney, and *David H. Hoffmann,* for appellee Clermont County Department of Human Services.

*Denise S. Barone,* for appellant Becky Ament.

*Anita M. Bechmann,* guardian *ad litem.*

POWELL, Judge.

Appellant, Becky Ament, appeals the judgment of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children to the Clermont County Department of Human Services ("CCDHS"). We affirm the judgment of the trial court.

Appellant is the biological mother of Mason (born 10/26/94), Stevie (born 3/28/97), and Hunter (born 5/15/99). Kevin Ament, now deceased, was the biological father of the children.

CCDHS became involved with Mason and Stevie in 1997 after receiving a report that Stevie was taken to a hospital for first- and second-degree burns on her hands, legs, and back. At the time, appellant and her husband had charges pending against them for child endangerment in Campbell County, Kentucky. CCDHS filed a complaint alleging that Mason and Stevie were dependent pursuant to R.C. 2151.04. After conducting a hearing on the matter, the trial court adjudicated Mason and Stevie as dependent and placed them in the temporary custody of CCDHS. Appellant pled guilty in the Clermont County Common Pleas Court to two counts of endangering children and was sentenced to five years of community control.

CCDHS later moved the trial court to grant permanent custody of Mason and Stevie to CCDHS. The trial court denied the motion and ordered that the children remain in the temporary custody of CCDHS. Mason and Stevie remained in foster care from December 1997 through April 1999. In April 1999, upon the motion of CCDHS, the trial court granted legal custody of Mason and Stevie to appellant and her husband, subject to protective supervision. The trial court adopted a case plan to assist the family in correcting the issues that led to the placement of the children in the custody of CCDHS. Appellant gave birth to Hunter in May 1999.

Appellant and her husband appeared to be making progress in accordance with the goals and objectives set forth in the case plan, but on December 21, 1999 appellant's husband committed suicide by shooting himself in the head in the family's doghouse. Traumatized by the discovery of her husband's suicide, appellant left her home that night with her three children and never returned. Eventually, appellant took Mason, Stevie, and Hunter to Newport, Kentucky, to

live with her mother, Kim Stewart. While her children were in the care of her mother, appellant attempted suicide by ingesting cocaine, alcohol, and "pills." Stewart, with whom appellant never had a strong relationship, asked appellant to leave her home and refused to allow appellant to stay with her. Stewart continued to provide some level of care for the children. However, appellant did not have a permanent place for her or her children to live.

Appellant was arrested for violating conditions of her community control. Specifically, appellant used drugs and alcohol, she failed to inform the probation department of her residence, and she failed to report to the probation department as required. Appellant was sentenced to complete a four-to-six-month "lock-down" drug-treatment program at the River City Correctional Facility.

The trial court granted emergency protective custody of Mason, Hunter, and Stevie to CCDHS. CCDHS filed a complaint with the trial court, alleging that Hunter was dependent pursuant to R.C. 2151.04. CCDHS moved the trial court to grant permanent custody of all three children to CCDHS. At the conclusion of a bifurcated hearing, the trial court first determined that Hunter was a dependent child. The trial court then awarded permanent custody of the children to CCDHS. Appellant moved the trial court for a new trial on the basis of alleged irregularities during the hearing. The trial court overruled appellant's motion. Appellant appeals the judgment of the trial court and raises one assignment of error for review:

"The trial court erred to the prejudice of appellant when it ruled in favor of the state's motion requesting that permanent custody of the ament children be awarded to the department of human services."

Appellant claims that the trial court erred by granting permanent custody of her children to CCDHS. In support of her assignment of error, appellant presents five separate issues. First, appellant argues that there was insufficient evidence for the trial court to determine that Hunter was dependent. Second, appellant argues that the trial court failed to properly adjudicate Mason and Stevie as dependent. Third, appellant argues that CCDHS's motion for permanent custody was untimely. Fourth, appellant maintains that *res judicata* bars the trial court from awarding permanent custody of Mason and Stevie to CCDHS. Fifth, appellant asserts that the trial court erred by denying her motion for a new trial. We will address each of appellant's issues in turn.

Appellant first argues that there was insufficient evidence for the trial court to determine that Hunter was dependent. Appellant maintains that she provided Hunter with a safe, secure environment by leaving them with her mother. She further contends that the state provided no evidence to demonstrate that her mother's home was "an inappropriate placement."

A determination of dependency must be supported by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that which will produce in the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. An appellate court's inquiry is limited to whether sufficient credible evidence exists to support the trial court's determination. See, *e.g., In re Pieper Children* (1991), 74 Ohio App.3d 714, 722, 600 N.E.2d 317, 321–322; *In re Bolser* (Jan. 31, 2000), Butler App. Nos. CA99–02–038 and CA99–03–048, unreported, 2000 WL 146026.

As relevant to this case, R.C. 2151.04 defines "dependent child" to include any child:

"(C) Whose condition or environment is such as to warrant the state, in the interest of the child, in assuming the child's guardianship;

"(D) To whom both of the following apply:

"(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

"(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."

The determination that a child is dependent requires no showing of fault on the parent's part. Instead, the focus is solely upon "the child's situation to determine whether the child is without proper (or adequate) care or support." *In re Riddle* (1997), 79 Ohio St.3d 259, 262, 680 N.E.2d 1227, 1229–1230. When a child is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver, the child is not a dependent child. *Id.* at 263, 680 N.E.2d at 1230–1231.

In this case, the trial court was presented with evidence that Hunter lacked proper care and support. After the death of appellant's husband, appellant left the family home. Appellant stayed with friends and eventually she moved in with her mother, Kim Stewart. Stewart, with whom appellant never had a strong relationship, asked appellant to leave her home and refused to allow appellant to stay with her. At the time, Hunter was only eight months old. Although Stewart continued to provide some level of care to the children, there was no evidence that Stewart's efforts to provide care to Hunter were the result of any agreement or arrangement between appellant and Stewart. Moreover, appellant did not have a permanent place for her or her children to live.

Appellant attempted suicide by ingesting cocaine, alcohol, and "pills." Appellant was arrested for violating conditions of her community control and was sentenced to complete a four-to-six-month "lock-down" drug-treatment program at the River City Correctional Facility. In order to ensure that Hunter and his siblings received adequate care, CCDHS sought and was granted emergency custody of the children.

Accordingly, we conclude that sufficient credible evidence exists to support the trial court's determination that Hunter is a dependent child.

Second, appellant argues that the trial court failed to adjudicate Mason and Stevie as dependent. Appellant maintains that the trial court committed a "tactical error" by failing to readjudicate Mason and Stevie as dependent at the same time that Hunter was adjudicated to be dependent.

R.C. 2151.353(A) provides a trial court with several alternative dispositions for a child adjudicated as dependent. Generally, the trial court may place the child in protective supervision; commit the child to the temporary custody of a public children services agency, a private child-placing agency, a parent, or a relative; award legal custody of the child to either parent; or commit the child to the permanent custody of a public children services agency or a private child-placing agency in accordance with R.C. 2151.414. R.C. 2151.353(A). The trial court retains jurisdiction over any child for whom the trial court issues an order of disposition until the child reaches eighteen years of age or the child is adopted. R.C. 2151.353(E)(1).

The trial court adjudicated Mason and Stevie as dependent pursuant to R.C. 2151.04 in December 1997. Pursuant to R.C. 2151.353(A)(2), the trial court committed the children to the temporary custody of CCDHS. In 1999, the trial court, pursuant to R.C. 2151.353(A)(1), returned the children to appellant and her husband, subject to a six-month term of protective supervision. The trial court extended its order for protective supervision several times. Mason and Stevie were still in protective supervision when the trial court granted emergency custody to CCDHS just prior to the final adjudicatory hearing. Thus, at all times, the trial court maintained jurisdiction over Mason and Stevie as dependent children. The trial court did not err by failing to readjudicate Mason and Stevie as dependent.

Alternatively, appellant asserts that the trial court, in determining whether to award permanent custody of Mason and Stevie to CCDHS, should have applied the version of R.C. 2151.414 in effect at the time the trial court adjudicated them as dependent.

This court has held that a trial court should apply the version of the statute in effect at the time that the motion for permanent custody was filed

when ruling upon a motion for permanent custody. *In re Rodgers* (2000), 138 Ohio App.3d 510, 513, 741 N.E.2d 901, 903–904. Therefore, the trial court did not err by failing to apply a former version of R.C. 2151.414.

Third, appellant asserts in a labyrinthine argument that CCDHS's motion for permanent custody was untimely. Appellant appears to argue that CCDHS inappropriately sought permanent custody of Mason, Stevie, and Hunter before having custody of them for a certain time period. It appears that appellant maintains that CCDHS is required to have custody of the children for twelve consecutive months prior to filing a motion for permanent custody.

Under Ohio law, there are two mechanisms by which a child may be committed to the permanent custody of a public children services agency. *In re Vinci* (Sept. 3, 1998), Cuyahoga App. No. 73043, unreported, 1998 WL 564033. The agency may file an original complaint alleging that the child is dependent, neglected, or abused and request permanent custody as the disposition. R.C. 2151.353(A)(4); R.C. 2151.414. Alternately, the agency may file a motion for permanent custody subsequent to a prior order of temporary custody of the child to the agency or long-term foster care. R.C. 2151.413; R.C. 2151.414. R.C. 2151.413 governs such motions for permanent custody and provides:

"(A) A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to January 1, 1989, is granted temporary custody of a child who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child.

"* * *

"(D)(1) Except as provided in * * * this section, if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child."

With regard to Hunter, CCDHS filed an original complaint alleging him to be a dependent child. In the complaint, CCDHS requested permanent custody of Hunter as the first disposition and temporary custody as the alternative disposition. CCDHS's complaint is not untimely and wholly permissible under R.C. Chapter 2151.

Turning to Mason and Stevie, the trial court placed them in the temporary custody of CCDHS in December 1997 pursuant to R.C. 2151.353(A)(2). The children remained in the custody of CCDHS for sixteen consecutive months before the trial court returned them to appellant and her husband under the

protective supervision of CCDHS. The children remained under protective supervision for approximately seven months before the trial court, pursuant to its continuing jurisdiction over the children under R.C. 2151.353(E)-(1), returned them to the temporary custody of CCDHS.

■ CCDHS had custody of Mason and Stevie for at least twelve months in a consecutive twenty-two-month period. In addition, at the time CCDHS filed its motion for permanent custody, Mason and Stevie were in the temporary custody of CCDHS. Accordingly, CCDHS's motion for permanent custody was appropriate and "timely" under both R.C. 2151.413(A) and (D)(1).

Fourth, appellant argues that *res judicata* bars the trial court from awarding permanent custody of Mason and Stevie to CCDHS. According to appellant, the trial court's denial of CCDHS's motion for permanent custody of Mason and Stevie in 1999 bars CCDHS from filing a second motion for permanent custody that includes some of the same facts and issues as the first motion. Appellant contends that CCDHS must confine its motion for permanent custody to only those issues that occurred after the trial court denied the first motion.

■ Under the doctrine of *res judicata*, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. However, unlike other proceeding or actions, a dispositional hearing at which the permanent custody of a child is at issue requires the court to look at the past, present, and even the future in determining the best interest of the child and whether the child can or should be placed with a parent. See R.C. 2151.414. Further, the trial court retains jurisdiction over any child for whom the trial court issues an order of disposition until the child reaches eighteen years of age or the child is adopted. R.C. 2151.353(E)(1). Accordingly, this court has held:

■ "Inasmuch as the juvenile court is vested with continuing jurisdiction to review and, if necessary, modify its dispositional orders, * * * *res judicata* does not prohibit the litigation of issues relevant to a motion for permanent custody even though the same or similar issues may have been considered in a prior action falling within the purview of R.C. Chapter 2151." *In re Burkhart* (Aug. 19, 1991), Butler App. No. CA90-07-146, unreported, 1991 WL 160086; accord *In re Vaughn* (Dec. 6, 2000), Adams App. No. 00CA692, unreported, 2000 WL 33226177.

Accordingly, *res judicata* does not bar the trial court from awarding permanent custody of Mason and Stevie to CCDHS.

Finally, appellant argues that the trial court erred by denying her motion for a new trial. Appellant argues that a witness reported that there was an irregularity in the proceedings that requires a new trial.

■ Pursuant to Civ.R. 59(A), the trial court may grant a new trial to any party on any issue upon any number of specified grounds, including "irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial[.]" In addition, a trial court has the discretion to grant a new trial for "good cause shown." Civ.R. 59(A). The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59 rests in the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. *Sharp v. Norfolk & W. Ry. Co.* (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219; *Dillon v. Bundy* (1991), 72 Ohio App.3d 767, 773, 596 N.E.2d 500.

Appellant moved for a new trial on the basis of "factual irregularities." However, appellant's motion lacked any specificity with regard to the alleged irregularities. The trial court ordered appellant to provide, by way of affidavit, the facts upon which her allegations were based. Appellant failed to provide any affidavits to the trial court, and the trial court overruled her motion.

■ Civ.R. 59(A)(1) provides a trial court with discretion to grant a new trial when an irregularity in a court proceeding prevents a party from having a fair trial. This discretion preserves the integrity of the judicial system where the presence of serious irregularities in a proceeding could have a material adverse effect on the character and public confidence in judicial proceedings. See, *e.g.*, *Koch v. Rist* (2000), 89 Ohio St.3d 250, 730 N.E.2d 963; *Meyer v. Srivastava* (2001), 141 Ohio App.3d 662, 752 N.E.2d 1011. However, a trial court does not abuse its discretion by denying a motion for a new trial when the moving party utterly fails to provide any factual basis to support a charge of irregularity in the proceedings. Here, appellant never specified what alleged irregularity occurred during the proceeding, nor did appellant provide the trial court with the facts upon which the alleged unspecified irregularity was based. Therefore, the trial court did not abuse its discretion in denying appellant's motion for a new trial.

Appellant's five issues presented in support of her assignment of error are without merit. Accordingly, appellant's assignment of error is overruled.

*Judgment affirmed.*

VALEN, P.J., and WALSH, J., concur.