OPINION
{¶ 1} Appellant, Phyllis Woods ("Ms. Woods"), appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of two of her children to the Butler County Children Services Board ("BCCSB"). We affirm the juvenile court's decision.
 {¶ 2} Ms. Woods is the mother of Jonathan Woods ("Jonathan"), born July 31, 1997, and Mitchell Mercurio ("Mitchell"), born June 3, 2000. In November 2000, Jonathan and Mitchell were removed from Ms. Woods' home after Ms. Woods was found unconscious in the home after overdosing on Oxycontin. BCCSB took temporary custody of the children, who were subsequently placed in foster care. BCCSB had previously removed Jonathan from Ms. Woods' care in August 1997, but returned him to her care in July 1999 after she completed her case plan.
 {¶ 3} Ms. Woods was either incarcerated or living out of state during much of the year following the November 2000 removal. She sporadically visited Jonathan and Mitchell during that time. In February 2001, Ms. Woods was convicted of driving under the influence, fourth offense, and sentenced to one and a half years in prison. She served two months and was then granted judicial release. However, she violated her probation conditions and was returned to prison in February 2002. She was incarcerated at the time of the permanent custody hearing in October 2002, with her release date scheduled for November 2002.
 {¶ 4} Ms. Woods has a long history of substance abuse problems. Substance abuse was the reason for Jonathan's initial removal in August 1997, and was the reason for the previous removal of two other children. While out of prison, Ms. Woods sought treatment for her drug and alcohol problems, but consistently was unable to complete drug treatment programs.
 {¶ 5} In September 2002, the juvenile court found Jonathan and Mitchell to be neglected and dependent children. The juvenile court then held a hearing on BCCSB's motion for permanent custody in October 2002. In April 2003, the juvenile court adopted a magistrate's decision that granted BCCSB's motion for permanent custody. Ms. Woods now appeals that decision, assigning one error as follows:
 {¶ 6} "THE TRIAL COURT'S DECISION PLACING CUSTODY WITH THE BCCSB IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 7} In this assignment of error, Ms. Woods argues that the evidence at the permanent custody hearing did not support the juvenile court's decision. Specifically, she argues that the evidence did not support the juvenile court's conclusion that permanent custody was in the best interest of Jonathan and Mitchell. She argues that "there was no clear and convincing evidence at either the time of removal or the final custody hearing that she [was] incapable or uninterested in providing for the best interests of her children."
 {¶ 8} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. Inre Starkey, 150 Ohio App.3d 612, 617, 2002-Ohio-6892; In re Ament
(2001), 142 Ohio App.3d 302, 307. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In reRodgers (2000), 138 Ohio App.3d 510, 520.
 {¶ 10} Before granting permanent custody of children to the state, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re WilliamS., 75 Ohio St.3d 95, 1996-Ohio-182.
 {¶ 11} When a state agency moves for permanent custody, the trial court is first required to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(B)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 12} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 13} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 14} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 15} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 16} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 17} Once a trial court finds by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the movant, the court may grant permanent custody if any of the following in R.C. 2151.414(B)(1) apply:
 {¶ 18} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 19} "(b) The child is abandoned.
 {¶ 20} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 21} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 22} In arriving at its best interest determination, the juvenile court analyzed each factor under R.C. 2151.414(D). In analyzing the children's interaction with care providers, the court noted that while Ms. Woods had visited the children only sporadically since the removal, her interactions with them were "very appropriate" when she did visit. The court also discussed the children's strong bond with each other, and with their foster family. The court stated that the children showed great affection toward their foster parents and extended foster family members. The foster family expressed an intention to adopt both children.
 {¶ 23} Under the second factor, the court noted that the children's guardian ad litem recommended permanent custody with BCCSB for both children. Under the third factor, the court stated that both children had been in the temporary custody of BCCSB for over 12 months in a consecutive 22-month period. Jonathan had been in his mother's custody for 16 months of his life, and in the custody of BCCSB for almost four years of his life. Mitchell had been in the custody of his mother for approximately five and a half months of his life, while being in BCCSB's custody for nearly two years.
 {¶ 24} The court extensively discussed the fourth factor regarding the children's need for legally secure placement. The court noted that Jonathan had experienced "severe behavioral and emotional problems associated with his removals from his mother." The court stated that "[w]ith every re-start or stop in visitation with his mother, he would experience heightened anxiety." The court then pointed to the opinion of Jonathan's therapist that Jonathan greatly needed permanence.
 {¶ 25} The court also discussed Ms. Woods' alcohol use, and her use of illegal substances such as marijuana and Oxycontin. The court mentioned her failed attempts at drug treatment. While the court stated that Ms. Woods loved her children, the court had serious doubts about whether Ms. Woods could maintain her sobriety and appropriately parent her children. The court concluded that permanent custody with BCCSB was the only way legally secure permanent placement of the children could occur. The juvenile court also noted that R.C. 2151.414(E)(11) applied to this case because appellant had her parental rights terminated with respect to two other children.
 {¶ 26} We find sufficient credible evidence in the record supporting the juvenile court's decision. Evidence in the record raises serious doubts about Ms. Woods' ability to remain sober and her commitment to such a goal. The record shows that Ms. Woods has a long history of substance abuse problems, and that she has consistently been unable to complete drug treatment programs. Her substance abuse problems were the cause of these children's removal and have been the cause of other removals in the past. Additionally, evidence in the record supports the juvenile court's conclusion that the children immediately need legally secure placement. Julie Melanson, Jonathan's therapist, testified extensively at trial about Jonathan's need for permanence, and his anxiety problems stemming from his uncertain future. She testified that Jonathan's resilience had reached an end and that he needed permanence immediately. Further, as the juvenile court noted, both of the children have been in foster care for the majority of their lives. Mitchell has been in foster care for almost two years, while only being in Ms. Woods' care for approximately five and a half months. Jonathan has been in foster care for approximately four years of his young life.
 {¶ 27} Based on the above discussion, we find ample evidence supporting the juvenile court's best interest finding. As previously stated, both Jonathan and Mitchell had been in the temporary custody of BCCSB for over 12 months in a consecutive 22-month period leading up to the permanent custody hearing in October 2002. Therefore, after finding clear and convincing evidence that permanent custody with BCCSB was in the children's best interest, the juvenile court had the power by statute to grant permanent custody to BCCSB. See R.C. 2151.414(B)(1).
 {¶ 28} The juvenile court's decision is supported by sufficient credible evidence in the record. Additionally, the juvenile court considered all the factors set forth in R.C. 2151.414(D). Accordingly, we find no error in the court's decision granting permanent custody to BCCSB. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.