OPINION
{¶ 1} Appellant, Tonya Brock, appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of her three children to appellee, Warren County Children's Services ("WCCS").
 {¶ 2} On December 7, 2001, a complaint was filed alleging that appellant's children, Felicia, Brandon and Matricia were dependent and neglected children. The children were removed from the home on December 7, 2001, and placed in emergency shelter care. When a fourth child, Stephanie, was born on December 9, 2001, she was also placed in the care of WCCS. The hearing had to be rescheduled and the complaint dismissed when appellant was without legal counsel to represent her. WCCS immediately filed another complaint alleging the children were dependent and neglected. On February 22, 2002, the trial court determined that Felicia, Brandon and Matricia were dependent and neglected. The trial court found that Felicia had been sexually abused by her father and exhibited behaviors indicative of mental illness. The court found that Brandon and Matricia were developmentally delayed and that appellant had problems maintaining the household. Following a dispositional hearing, the trial court granted temporary custody of Brandon and Matricia to WCCS and Felicia was placed in a planned permanent living arrangement.
 {¶ 3} Stephanie was briefly returned to appellant, but was removed from the home when a new complaint was filed on July 11, 2001 alleging that Stephanie was a dependent child. After a hearing, Stephanie was adjudicated a dependent child and was placed into the temporary custody of WCCS.
 {¶ 4} On December 10, 2002, WCCS filed a motion for permanent custody of Brandon, Matricia and Stephanie. The trial court held hearings on February 10, 2003 and March 17, 2003. Based on the evidence, the trial court determined that it was in the children's best interest to award permanent custody to WCCS.
 {¶ 5} Appellant now appeals the trial court's decision awarding permanent custody of Brandon, Matricia and Stephanie to WCCS. She raises the following single assignment of error for our review:
 {¶ 6} "THE DECISION TO GRANT THE MOTION FOR PERMANENT CUSTODY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 7} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 8} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. Inre Starkey, 150 Ohio App.3d 612, 617, 2002-Ohio-6892; In re Ament
(2001), 142 Ohio App.3d 302, 307. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In reRodgers (2000), 138 Ohio App.3d 510, 520.
 {¶ 9} When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re William S. (1996), 75 Ohio St.3d 95,1996-Ohio-182.
 {¶ 10} A trial court may not award permanent custody of a child to a state agency unless the agency satisfies two statutory factors. First, the agency must demonstrate that an award of permanent custody is in the best interest of the child. R.C. 2151.414(B)(2). Second, the agency must show that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, or that the child has been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period. Id.
 {¶ 11} In making the best interest determination, a trial court is required to consider all relevant factors, including but not limited to the following factors, enumerated in R.C. 2151.414(D):
 {¶ 12} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 13} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 14} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 15} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 16} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 17} The court found by clear and convincing evidence that it was in the best interest of the children to award permanent custody to WCCS. Our review of the record supports the trial court's findings.
 {¶ 18} Christine Kelly, an investigative caseworker for WCCS, testified that on November 1, 2001 she received a referral regarding Felicia being raped behind a dumpster in her apartment complex. As a result of the referral, she also became involved with the other children. Kelly had concerns regarding what she saw as developmental delays in Brandon and Matricia. She was concerned because Matricia had a condition with her eyes that caused them to be crossed and needed to wear corrective glasses, but never had them on when Kelly visited. She testified that she had concerns because Brandon appeared malnourished, and the children never had clothes on and were never playing, but always clinging to their mother. She noticed little or no furniture in the apartment, along with few hygiene products and little food. Kelly set up appointments for the children to receive services, but appellant did not follow through. Kelly had to take Felicia to medical appointments herself to make sure she got there. On one occasion, Kelly took Felicia to a medical appointment, but they had to go back home afterwards because Felicia forgot her school backpack. Kelly testified that appellant woke up when she entered the apartment, wanting to know who was there, and Kelly observed Brandon in a corner with cigarettes in his hand and tobacco on his genitalia. The children were then removed from the home. Kelly stated that prior to this time, she had high-risk concerns, but not for an immediate removal.
 {¶ 19} Angie Wiseman, a placement caseworker at WCCS, testified that the agency has had numerous referrals with appellant and her family since 1991. She stated that appellant has given birth to five children, and is currently pregnant. Appellant's oldest child, Christine, was removed from the home and placed in the permanent custody of WCCS in 1997. She discussed the December 7, 2001 removal of Brandon and Matricia, and the removal of Stephanie from the hospital a few days later. She stated that Stephanie was returned to her mother, but removed a second time because appellant was evicted from her apartment. The agency was also concerned because appellant had taken Stephanie on an overnight visit to see Ricky Brock, the children's father, whom appellant had said was physically abusive and had sexually abused Felicia.
 {¶ 20} Wiseman testified that during a July 10, 2002 home visit, she noticed that several people were living with appellant, there were clothes all over, and no food in the house. On that day, appellant told Wiseman that Stephanie was with a woman named Janette, but she did not know her last name, phone number or anything else other than that Janette lived in South Lebanon. Wiseman also expressed concerns because appellant failed to take Stephanie for her vaccinations and six-month checkup, even though Wiseman had discussed it with her and written the date down. She was further concerned when appellant failed to follow up on the missed appointment.
 {¶ 21} Wiseman stated that there were concerns because appellant was unable to maintain stable housing and had lived in four or five places since the agency's most recent involvement. She stated that although a case plan was prepared, appellant failed to follow through on all of the classes, did not complete the Home Works program, and did not complete a second drug and alcohol evaluation. She also expressed concern that appellant has never maintained stable employment and has no transportation. Wiseman stated that Stephanie is 15 months old, has spent 13 months of her life in foster care, and is doing extremely well. She stated that the children are all in the same foster home and have adjusted well.
 {¶ 22} Dr. Charles Lee conducted a psychological examination of appellant. He indicated that she had concerns and was overly anxious dealing with all the children at once. Dr. Lee determined that appellant lacks confidence, has anxiety, tends to become involved in dependent relationships, and becomes angry if people don't take care of her and meet her needs. He also noted that she has a tendency to abuse alcohol to deal with stress. He stated that she needed long-term treatment to deal with her issues, along with home-based services.
 {¶ 23} Pricilla Swanbates, an Art and Children/Family Therapist, testified that she worked with appellant at the Warren County Abuse and Rape Center. She stated that appellant was in the shelter for about a month, then came to parenting classes at the center. She testified that there were periods where appellant did not attend classes and, although she finished some classes, she attended others sporadically and did not finish. She testified that she recommended appellant attend a domestic violence group because she continually gets involved with the wrong people. Swanbates also testified that appellant knows the material covered in the classes, but is unable to see it in real life. She indicated that appellant does not know how to set limits and to maintain a stable lifestyle, and continually has problems in abusive relationships with men. She stated that appellant made some progress, although not as much as she would have liked to see, and that appellant still has a long way to go.
 {¶ 24} Katherine Myers, a physical therapist with Mental Health of Warren County, testified that appellant was involved with the agency through the Home Works program, which provides home-based services. An assessment by the agency showed that appellant needed individual therapy and psychiatric services, but appellant did not show for all of the scheduled sessions. Myers testified that appellant was initially involved in Home Works, but was not able to be involved when she lost her residence, and that appellant did not contact them until right before the hearing to reestablish services.
 {¶ 25} Edgar Wallace, a psychiatric assistant at the Children's Diagnostic Center, testified that he evaluated Brandon at his office. He noted that Brandon seemed to want to test limits and to control the agenda. He found Brandon was of average intelligence, but lower than average developmentally. He stated that the child has problems controlling his behaviors and conforming to the requirements of a situation, along with problems concentrating and focusing, and with overall self-control. Wallace stated that lack of structure and lack of stability causes problems for Brandon more than other children.
 {¶ 26} Appellant testified that her husband, Ricky Brock, was verbally, physically and sexually abusive with her, and that he sexually abused Felicia. At the February hearing, she testified that she had moved several times, was currently living in a house with three men and was involved with one of them, Kenny Stivers, and pregnant with his child. At the March hearing, she testified that she was living with a friend in a one-bedroom apartment, and was waiting for a place to be available for her, Kenny and the children. She stated that she and Kenny had been together for about five or six months and her plan was to get divorced and marry Kenny, and that Kenny would work and support her and the children.
 {¶ 27} The guardian ad litem prepared a report and spoke at the hearing. He expressed concerns because appellant had completed only minimal aspects of the case plan. He stated that he was more troubled by her lack of stability and lack of basic care, including food, clothing and shelter, for the children. He found that appellant had trouble caring for herself, let alone children, and recommended that permanent custody was in the best interest of the children.
 {¶ 28} Based on the above evidence, there is competent, credible evidence that permanent custody is in the best interest of the children in this case. Appellant is unable to provide the basic necessities, including medical care, food, clothing and a stable home, for the children. Although many, many services were scheduled for appellant, she failed to follow through in order to provide for her children. In addition, there are concerns regarding her abusive relationships and alcohol abuse.
 {¶ 29} The trial court also found that Brandon and Matricia had been in the care of WCCS for more than 12 months of a consecutive 22-month period. The court further found that none of the children could be placed with the parents within a reasonable time and that they should not be placed with either of their parents.
 {¶ 30} In determining that a child cannot be placed with either parent within a reasonable time, or should not be placed with either parent, the trial court must consider the factors enumerated in R.C.2151.414(E). As applicable to this case, these factors include:
 {¶ 31} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 32} "* * *
 {¶ 33} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 34} "* * *
 {¶ 35} "(10) The parent has abandoned the child.
 {¶ 36} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 37} "* * *
 {¶ 38} "(16) Any other factor the court considers relevant."
 {¶ 39} Again, we find competent, credible evidence to support the trial court's decision on this issue. The evidence shows that appellant is unable to properly care for and protect her children, and that, despite agency efforts to provide resources and assistance to her, appellant has made little progress on the issues that caused the removal of the children. Nor does any of the evidence indicate that appellant will be able to resolve these issues in the future. At the same time, the children are in need of stability, permanency and consistency in their lives.
 {¶ 40} We find that the trial court made the required statutory findings and that these findings are supported by the record. Thus, we find that the trial court did not err in granting permanent custody of the children to WCCS.
Judgment affirmed.
VALEN, P.J., and POWELL, J., concur.