OPINION
{¶ 1} Appellant, Kenneth Skwarczynski, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his daughter to Butler County Children Services Board ("BCCSB").
 {¶ 2} Appellant and Bonnie Elliott are the biological parents of Anna Marie, born on May 18, 2000. On the day Anna Marie was born, BCCSB filed a complaint alleging that the baby was a dependent child and requested temporary custody. The basis of the request was that Elliott had failed to provide any prenatal care for the baby and that BCCSB had serious concerns about Elliott's ability to care for the child. This concern was a result of the agency's involvement with another one of Elliott's children, who had been removed from Elliott's home and permanent custody of whom had been granted to BCCBS.
 {¶ 3} Anna Marie was placed in foster care and was adjudicated a dependent child. BCCSB worked with appellant and Elliott in an attempt to return Anna Marie to the parents. However, little progress was made and the agency moved for permanent custody on September 5, 2001.
 {¶ 4} A magistrate held a hearing over several days and heard testimony and evidence from BCCSB caseworkers, a family life educator, a social services aid, a psychologist and the guardian ad litem regarding the parents' inability to remedy the conditions that caused the child to be removed from their care. The magistrate issued a decision granting permanent custody of Anna Marie to BCCSB. The trial court adopted the magistrate's decision on April 7, 2003.
 {¶ 5} Appellant now appeals the trial court's decision to grant permanent custody of the child to BCCSB.[1] He raises the following single assignment of error for our review:
 {¶ 6} "The Trial Court's Decision To Grant Bccsb Permanent Custody Is Not Supported By Clear And Convincing Evidence."
 {¶ 7} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 8} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. Inre Starkey, 150 Ohio App.3d 612, 617, 2002-Ohio-6892; In re Ament
(2001), 142 Ohio App.3d 302, 307. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In reRodgers (2000), 138 Ohio App.3d 510, 520.
 {¶ 9} When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re William S., 75 Ohio St.3d 95,1996-Ohio-182.
 {¶ 10} A trial court may not award permanent custody of a child to a state agency unless the agency satisfies two statutory factors. First, the agency must demonstrate that an award of permanent custody is in the best interest of the child. R.C. 2151.414(B)(2). Second, the agency must show that the child cannot be placed with one of its parents within a reasonable time or should not be placed with either parent, or that the child has been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period. Id.
 {¶ 11} Appellant contends that the trial court erred in finding that the evidence demonstrates that it was in the child's best interest to grant permanent custody to BCCSB. He argues that the evidence demonstrates that it is in the child's best interest for him to be granted custody.
 {¶ 12} In making the best interest determination, a trial court is required to consider all relevant factors, including but not limited to the following factors, enumerated in R.C. 2151.414(D):
 {¶ 13} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 14} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 15} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 16} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 17} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 18} The court found by clear and convincing evidence that it was in the best interest of the children to award permanent custody to BCCSB. Our review of the record supports the trial court's findings.
 {¶ 19} A review of the record reveals that after Anna Marie's removal from appellant at birth, a case plan was prepared which provided numerous services, classes and counseling for appellant as a means to remedy the situation which caused the child to be removed from the home. However, despite this effort on the part of BCCSB, appellant failed to demonstrate progress in the case plan. The case plan called for a drug evaluation and individual counseling which appellant did not complete. He was scheduled for developmental living skills instruction, but was not cooperative.
 {¶ 20} One of the major goals BCCSB set for appellant was for him to obtain stable housing and a safe environment for the child. Appellant's lifestyle was an issue in this case, as well as in the case involving Elliott's other child who was removed from the home. Appellant, his wife, their thirteen-year-old daughter and Elliott, who appellant described as his fiancée, all lived together. Appellant stated that he and his wife planned to divorce, and he would marry Elliott, but that they would all continue to live together. At the time of the hearing, another couple was living with the family.
 {¶ 21} Testimony established that appellant, along with the other members of his household, moved numerous times since Anna Marie's birth and many of the places were unsafe to raise a small child. The places were described as dirty and cluttered, with little furniture, and tools and car parts lying all around. One house had holes in the floor and exposed wiring. Another housing concern was that a number of pets were present, including a rabbit, dog and hamster. The dog had a skin disorder, and was shedding chunks of fur all over that was not cleaned up. Another home had problems with a dead pigeon or bat on the stairs that was not removed for a while, flies, clutter, boxes everywhere, dirty dishes and little furniture. Testimony established that these homes could have been made safer and more sanitary by cleaning, getting rid of the clutter, and by using appropriate fences, but that they were not appropriate for young children. Although BCCSB provided numerous classes and in-home services to help appellant remedy the housing problem, he was unable or unwilling to follow through and create a safe, sanitary home for the child.
 {¶ 22} Another concern involved appellant maintaining stable employment in order to provide for the family. There was testimony that appellant had ten jobs in the past two years and that the longest was for three to four months. Again, despite agency involvement, appellant was unable to make progress toward this goal.
 {¶ 23} Parenting skills were also a concern. Regular visitation was scheduled, but appellant missed many of the visits. BCCSB personnel also were concerned with appellant's lack of parenting skills and noted that he was more interested in talking with the adults present than interacting with Anna Marie. They reported that even when redirected and instructed to interact and play with the child, appellant continued to laugh and talk to adults or to go out and have a cigarette. His visits were eventually changed from a two-hour visit per week to a one-hour visit per week because he was late or was leaving early almost every visit, or failed to come at all.
 {¶ 24} The record shows that despite numerous agency opportunities to help appellant remedy the problems that were responsible for Anna Marie's removal, appellant consistently and continually failed to put forth his best efforts, or many times to put forth any effort at all.
 {¶ 25} Anna Marie has special needs. She has severe developmental delays and a behavior disorder. She requires physical, speech and occupational therapy, and her parents will need to provide special care for her. As mentioned above, appellant failed to provide the basic necessity of a safe, stable environment for the child and shows no signs of being able to adequately care for a child, much less a child with special needs.
 {¶ 26} Considering all of the above evidence, we find that the trial court did not err in determining that it was in Anna Marie's best interest for BCCSB to be granted custody. Despite being given numerous opportunities and assistance, appellant has failed to remedy even the most basic problems that prevent him from having custody of Anna Marie, including providing a safe home environment. In addition, his past performance provides no indication that he will ever be able or willing to accomplish the goals that would allow him to regain custody. Appellant's assignment of error is overruled.
 {¶ 27} Judgment affirmed.
VALEN, P.J., and POWELL, J., concur.
[1] The biological mother, Bonnie Elliot, has not appealed the trial court's determination.