OPINION
{¶ 1} Appellants, S.R. ("father") and M.B. ("mother"), appeal the decision of the Warren County Court of Common Pleas, Juvenile Division, to terminate their parental rights to their three children.
 {¶ 2} The children, S.R., dob March 14, 1999, W.R., dob November 5, 2002, and *Page 2 
C.R., dob September 1, 2004, were removed from the home and a complaint was filed by Warren County Children Services ("agency") on May 12, 2005. The children were adjudicated dependent and a disposition of temporary custody to the agency was entered in July 2005. A motion for permanent custody was filed November 16, 2006, and a decision granting the agency permanent custody of the three children was filed June 1, 2007.
 {¶ 3} We will address the issues raised in the appeals together. We construe mother's argument as a single assignment of error, challenging the juvenile court's finding that permanent custody is in the children's best interest.
 {¶ 4} Father presents a single assignment of error that contests the juvenile court's grant of permanent custody. He argues that the juvenile court erred in its best interest determination because the children's need for a legally secure permanent placement could be achieved without a grant of permanent custody to the agency, and therefore, the grant of custody violated the parents' protected interest in the care and custody of their children.
 {¶ 5} Indeed, natural parents have a constitutionally protected liberty interest in the care and custody of their children, and before this interest may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v. Kramer (1982), 455 U.S. 745, 753,769.
 {¶ 6} R.C. 2151.414(B)(1) provides that a juvenile court may grant permanent custody of a child to a children services agency if the court determines by clear and convincing evidence that it is in the best interest of the child to grant permanent custody of the child to the agency and that any of the factors set forth in R.C. 2151.414(B)(1)(a) through (d) apply. In re A. W., Clinton App. No. CA2006-10-036,2007-Ohio-722, ¶ 5-11; In re D.B., Butler App. No. CA2007-05-135,2007-Ohio-5391, ¶ 13.
 {¶ 7} The juvenile court in the instant case applied R.C.2151.414(B)(1)(d), finding by *Page 3 
clear and convincing evidence that the children had been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. The record supports that conclusion, which mother and father do not dispute.
 {¶ 8} Under their assignments of error, the parents challenge the juvenile court's best interest determination. In making a best interest determination, the juvenile court is required to consider all relevant factors, including, but not limited to, the factors enumerated in R.C.2151.414(D). In re J.S., Butler App. No. CA2005-12-502, 2006-Ohio-1150, ¶ 10;In re N.C, Madison App. No. CA2006-03-011, 2006-Ohio-3900, ¶ 14.
 {¶ 9} An appellate court's review of a juvenile court's decision finding clear and convincing evidence is limited to whether there is sufficient, credible evidence in the record supporting the court's decision. In re J.S. at ¶ 9, citing In re Ament (2001),142 Ohio App.3d 302, 307; In re A.W., 2007-Ohio-722 at ¶ 12.
 {¶ 10} R.C. 2151.414(D) required the juvenile court, in determining the child's best interest, to consider all relevant factors, including the following:
 {¶ 11} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 12} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 13} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 14} "(4) The child's need for a legally secure permanent placement and whether *Page 4 
that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 15} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."[1]
 {¶ 16} With regard to R.C. 2151.414(D)(1), the juvenile court found that father, who was incarcerated during the hearings in early 2007, had not interacted with his children since March 2006. The children were seeing their mother for weekly two-hour supervised visitations. While the juvenile court noted that the visitations with mother were described as "going reasonably well," it was reported that two of the three children were reluctant to attend the visits or separate from the foster family for the visits.
 {¶ 17} At the time of the hearings, the children were in their third foster placement. The juvenile court found that the children had adjusted well and were bonded with this foster family. The caseworker opined that the children exhibited a stronger bond with the foster parents than with their mother. The foster parents are reportedly interested in adoption.
 {¶ 18} The children's guardian ad litem ("GAL"), who discussed the wishes expressed by the two oldest children, recommended that permanent custody be granted to the agency for all three children. See R.C.2151.414(D)(2).
 {¶ 19} As to R.C. 2151.414(D)(3), the juvenile court noted that the children, who had been removed in May 2005, had been in the agency's custody for 12 or more months of a continuous 22-month period.
 {¶ 20} Mother and father challenge the juvenile court's findings under R.C. 2151.414(D)(4), that the children needed a legally secure permanent placement and whether this legally secure permanent placement can be achieved without a grant of permanent custody to the agency. *Page 5 
 {¶ 21} We note that father entered into stipulations at the beginning of the permanent custody hearings, acknowledging that he has had no contact with his children since March 2006, that he completed some case plan services, but did not complete others or failed to follow through with the recommendations from evaluations. Father stipulated that he refused to submit to drug screens or "failed to supply clean drug screens."
 {¶ 22} Evidence was provided regarding the case plan requirements for mother, which included obtaining a psychological evaluation and following through with the recommendations, a drug and alcohol evaluation and follow through, and maintaining stable housing. Other orders were made in accordance with the progress of the case, including random drug screens for the parents, and modifications to the required case plan services in an attempt to accommodate mother's schedule.
 {¶ 23} Testimony was presented that mother would fulfill some aspects of her case plan, but not follow through with others. Mother testified that she maintained stable employment throughout the course of this case, working as a nurse's aide in different nursing homes. In fact, mother indicated that she failed to attend or follow through with certain case plan services during this case because they conflicted with her work schedule and she made the decision to continue working. Mother also disputed the accuracy of her drug screens that were positive for drugs.
 {¶ 24} Both mother and father assert that mother improved her participation and progress in her case plan in 2007 and provides a viable option for reunification.[2] Father argued that the juvenile court contradicted itself in its findings concerning the children's legally secure permanent placement, by stating in its decision: "Whether the Children can be unified with mother, and if so, within what time frame, is an open question." *Page 6 
 {¶ 25} While the juvenile court's statement is perplexing at first blush, we read the comments in the context of the entire discussion, mindful that no one element of R.C. 2151.414(D) is given greater weight or heightened significance. In re CF., 113 Ohio St.3d 73, 84,2007-Ohio-1104, ¶ 57, citing In re Schaefer, 111 Ohio St.3d 498,2006-Ohio-5513, ¶ 56.
 {¶ 26} The juvenile court also stated that mother's stable situation in regard to housing, for example, is of "short-term duration." The juvenile court noted that "[i]t is unknown whether mother is prepared to be a full-time working parent for three young children," and this situation is "complicated by mother's mental health diagnosis of major depressive disorder." The juvenile court found that the children are "well bonded" with their foster parents, and had "languished in a custodial limbo for two years."
 {¶ 27} A reading of the juvenile court's decision, including the comment cited by father, demonstrates that the trial court thoroughly considered all of the issues raised when it made its best interest determination.
 {¶ 28} We find sufficient, credible evidence in the record supporting the court's determination by clear and convincing evidence that permanent custody to the agency was in the children's best interest, and that the agency should be granted permanent custody. The respective assignments of error of mother and father are overruled.
 {¶ 29} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] The juvenile court here found that none of the R.C. 2151.414(E)(7) to (11) factors apply.
[2] Father does not claim in his appellate brief that he provided an option for placement, arguing instead for placement with mother. *Page 1