DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellants Melissa G. and John P. and awarded permanent custody of their child Lauren P. to Lucas County Children Services Board ("LCCS"). For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} In addition to being the parents of Lauren, appellants have another daughter, born February 6, 2002, who was found by the Fulton County, Ohio, Juvenile Court to be an abused child. At the time of Lauren's birth, Kaylee, the older sibling, was in the temporary custody of the Fulton County Department of Job and Family Services, which had recently filed for permanent custody of Kaylee. Kaylee was found to have a broken femur, two broken ribs and multiple bruises over the rest of her body when she was 10 weeks old. Appellant Melissa G. ("Mother") admitted hitting Kaylee and causing bruising but denied causing broken bones. Both appellants were ordered by the Fulton County Juvenile Court to undergo a psychological evaluation, which resulted in the psychologist's conclusion that neither parent was capable of adequately parenting Kaylee without putting her at significant risk of new threats to her safety and that there was a high risk of threat to appellants' unborn child (Lauren).
 {¶ 3} Lauren P. was born in Toledo, Ohio, on April 20, 2003. Two days later, LCCS sought and was granted an ex parte order of emergency custody of the infant. On April 23, 2003, the agency filed a Complaint in Dependency: Permanent Custody regarding Lauren. An emergency shelter care hearing was held that same day and the agency was awarded emergency temporary custody of Lauren.
 {¶ 4} A hearing on the motion for permanent custody was held on July 16 and 17, 2003. The trial court heard the testimony of two caseworkers, the police officer who investigated reports of abuse of appellants' first child in 2002, the psychologist who evaluated both appellants, and that of appellants themselves. The record also contains the report and recommendations of Lauren's guardian ad litem, who expressed her belief that appellants pose a great danger to Lauren and that it would be in the child's best interest for LCCS to be granted permanent custody.
 {¶ 5} By judgment entry filed August 28, 2003, the trial court found Lauren to be a dependent child and awarded permanent custody to LCCS. The trial court made findings as to Lauren's sibling Kaylee having been adjudicated an abused child and noted that both parents had admitted to causing physical harm to Kaylee during times of frustration with the child. The trial court further found that both parents have histories of dysfunctional and abusive upbringings and abusive and assaultive behavior; appellant father ("John") has engaged in numerous instances of cruelty to animals; Melissa has a long history of mental illness and admits to episodes of blacking out; Melissa suffers from bipolar disorder, depression and a personality disorder; both parents admit to problems managing their anger; Melissa admits to mood swings which can lead to assaults upon John; the parents had been offered case plan services for approximately 15 months but had discontinued all services as of March 2003; both parents were unable to hold steady employment or maintain independent housing; at the time of the proceedings, there was an active warrant on John stemming from drug-related charges; and John admitted to a long history of violent behavior. Upon making those findings, the trial court adjudicated Lauren to be a dependent child.
 {¶ 6} As to disposition, upon consideration of the pleadings, motions, testimony, and all other evidence in the record, the trial court found, pursuant to R.C. 2151.353(A)(4) and 2151.414, that Lauren cannot and should not be returned to the care of either of her parents within a reasonable period of time due to the parents' severe and chronic mental and emotional illness which makes them unable to provide an adequate permanent home for Lauren at the present time and, as anticipated, within one year after the permanent custody hearing. The trial court further found that it is in Lauren's best interest that the motion for permanent custody be granted to LCCS. The trial court also found that appellants were unwilling to provide food, clothing, shelter and other basic necessities for Lauren or prevent her from suffering physical, emotional or sexual abuse, or physical, emotional or mental neglect, and that they had demonstrated a lack of commitment toward their child by failing to regularly support, visit or communicate with her when able to do so. The trial court found that the Fulton County Department of Job and Family Services had provided services to appellants in an attempt to rehabilitate them from April 2002, until the present in connection with the case filed regarding Kaylee, and that after the parents moved to Lucas County, LCCS facilitated services. The trial court concluded that an adoptive placement would positively benefit the child, that a grant of permanent custody would facilitate an adoption and that the child's need for a legally secure placement could not be achieved without an award of permanent custody.
 {¶ 7} It is from this judgment that appellants appeal.
 {¶ 8} Appointed counsel for appellant Melissa G., Penny Nasatir, has submitted a request to withdraw pursuant to Andersv. California (1967), 386 U.S. 738. In support of her request, counsel for appellant states that, after reviewing the record of proceedings in the trial court, she was unable to find any appealable issues.
 {¶ 9} Anders, supra, and State v. Duncan (1978),57 Ohio App.2d 93, set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous she should so advise the court and request permission to withdraw. Id. at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish her client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that she chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
 {¶ 10} In the case before us, appointed counsel for appellant has satisfied the requirements set forth in Anders, supra. This court notes further that appellant has not filed a pro se brief or otherwise responded to counsel's request to withdraw. Accordingly, this court shall proceed with an examination of the potential assignments of error set forth by counsel for appellant in her appellate brief and the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.
 {¶ 11} Counsel for appellant Melissa G. presents the following issues:
 {¶ 12} "Did the trial court commit error by overruling the assertion that the parents were not parties?"
 {¶ 13} "Did the trial court commit error by its finding of permanent custody with respect to mother?"
 {¶ 14} In granting a motion for permanent custody, the trial court must find that there is clear and convincing evidence that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all the relevant evidence, the court determines, by clear and convincing evidence, that one or more of those conditions exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to that case. Only if these findings are supported by clear and convincing evidence, can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996),75 Ohio St.3d 95. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 15} As to the first issue presented, appellate counsel notes that trial counsel "made several objections to the position of parents as parties to the case." This court cannot fathom either of the parents asserting that they are not parties to this case and, further, the citation to the transcript in mother's appellate brief has nothing to do with the issue of who may or may not be a party. We are unable to find support for this potential argument in the record and, accordingly, it has no merit.
 {¶ 16} Counsel for appellant mother also sets forth the potential assignment of error that the trial court committed error by awarding permanent custody to LCCS. Upon review of the record, however, this court finds that the trial court thoroughly considered the evidence presented as it related to appellant's ability to care for Lauren and properly applied the relevant law as set forth above. Accordingly, this court finds that the trial court's judgment was supported by clear and convincing evidence and that the trial court did not err by granting the agency's motion for permanent custody of Lauren. This potential assignment of error is not well-taken.
 {¶ 17} Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, appellant Melissa G.'s appeal is found to be without merit and is wholly frivolous. The motion to withdraw filed by counsel for appellant Melissa G. is well-taken and is hereby granted.
 {¶ 18} Appellant John P. sets forth the following three assignments of error:
 {¶ 19} "I. The trial court erred in denying Appellant's motion in limine and allowing and considering the testimony of Dr. Wayne Graves and the introduction of evidence that was hearsay and inadmissible under Rules 703 and 801.
 {¶ 20} "II. The court erred in denying Appellant's motion in limine and allowing Dr. Wayne Graves testimony when said testimony did not conform to the requirements of Daubert and the Rules of Evidence.
 {¶ 21} "III. The trial court erred in denying Appellant's motion to continue the trial."
 {¶ 22} In support of his first argument, John P. argues that the trial court should not have allowed the testimony of Dr. Wayne Graves, the psychologist who evaluated both appellants, because in making his evaluation the doctor relied on numerous records that were either not admitted into evidence or were objected to as hearsay. In support of his second assignment of error, John P. further argues that the trial court should not have allowed Dr. Graves' testimony because it did not conform to the requirements for the admission of expert testimony as set forth in case law and the Ohio Rules of Evidence.
 {¶ 23} On the morning of trial, John P. filed a motion in limine in which he asked the court not to allow the testimony of Dr. Wayne Graves. Appellant argued that he was entitled to a hearing, pursuant to Daubert v. Merrell Dow Pharmaceuticals,Inc. (1993), 509 U.S. 579, before the witness was permitted to testify as an expert. He further argued that medical records, legal correspondence and court records were inadmissible pursuant to Evid.R. 703. Appellant asked the trial court to prohibit Dr. Graves from testifying or, in the alternative, continue the trial and schedule a Daubert hearing. Appellee responded that the witness had been named on a list provided at a pretrial on May 28, 2003, which had allowed appellant ample time to request a hearing on the witness's qualifications. Appellee added that it had provided appellant with Dr. Graves's evaluation of appellants several months earlier. Appellant then responded that he did not object to the psychologist being called as a witness but said he wanted the witness qualified as an expert with all of the facts upon which he intended to rely entered into evidence. The trial court stated that Dr. Graves could be qualified as an expert during trial, and denied the motion.
 {¶ 24} We note that appellant did not object at trial to Dr. Graves testifying. Appellant stated that he had no objection to the witness being called but that he simply wanted the witness to be qualified as an expert and for all of the facts upon which he relied to be admitted into evidence. Therefore, appellant waived any argument on appeal as to Dr. Graves testifying as an expert.
 {¶ 25} Appellant claims that some of the documents admitted into evidence were privileged, but we note that both parents signed a release of information permitting Dr. Graves to share his report with the court and, accordingly, this argument is without merit.
 {¶ 26} As to the manner in which Dr. Graves was qualified as an expert witness, appellee initially examined the witness as to his educational background, professional training and certification, and professional experience and then moved to have him qualified as an expert in the field of psychology with a specialty in parenting and custody issues. Appellant then asked the court for permission to examine the witness as to the opinions he had formulated in this case and the tests and records upon which he based his opinions. Appellee objected that appellant was pursuing his motion in limine, which had already been denied, and asserted that the questions being asked by appellant had nothing to do with the witness's qualifications. The trial court noted that appellant appeared to be questioning the validity and weight of the witness's opinions. Appellant then stated that appellee was required to comply with Daubert and establish the reliability of the tests the witness used as a basis for his opinions, and that this should be done before the witness was qualified as an expert. The trial court found that the witness had been established as an expert and allowed appellee to continue with its direct examination.
 {¶ 27} In Daubert, supra, cited by appellant, the United States Supreme Court discussed the question of when expert scientific testimony is relevant and reliable. The Daubert
court held that, pursuant to Evid.R. 702, scientific testimony is admissible if it is reliable and relevant to the task at hand.Daubert at 589. Daubert listed several factors to be considered in evaluating the reliability of scientific evidence, but stated that although the factors may aid in determining reliability, the inquiry is flexible. Daubert at 594. The Ohio Supreme Court reached a similar conclusion in State v. Williams
(1983), 4 Ohio St.3d 53, endorsing a flexible standard. Id. at 56-57. Moreover, the Williams court left the matter of admissibility to the discretion of the state's judiciary, to be applied on a case-by-case basis. Id. at 58. In the case before us, Dr. Graves testified that he had administered several psychological tests to appellants and had given them some questionnaires to complete. He identified the tests and explained that they are standard tools he uses in every parenting evaluation which are well researched and have been in use within the industry for several decades. Dr. Graves further explained the weight he gives to each of the tests and "inventories" in making his assessments. He also testified that he integrates the test results with the information he obtains through his clinical interviews with the clients. Based upon Dr. Graves's testimony, we find that the trial court permitted a thorough review of the doctor's methodology and the reliability of his evaluative tools. While there is clearly a need for a trial court to screen for unreliable or irrelevant expert testimony, we find that in this case appellant was provided with more than adequate opportunity to examine the witness's testimony and challenge its reliability and relevance. Pursuant to Evid.R. 705, before an expert testifies in the form of an opinion, he must disclose the underlying facts or data upon which his opinion is based. We find that in this case appellee presented sufficient evidence to support the reliability of their expert's opinions and that Evid.R. 702 and Evid.R. 705 were satisfied.
 {¶ 28} Appellant further wanted all facts upon which the witness relied to be admitted into evidence. As to Evid.R. 703, which states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing[,]" we find Dr. Graves's testimony to be properly admitted. Dr. Graves testified that in making his evaluation and reaching his opinions as to appellants, he considered the orders of the Fulton County Court of Common Pleas concerning the finding of abuse as to the older sibling and the related caseworker notes and case plan for appellants. He also reviewed the older sibling's medical records, reports from the Fulton County Humane Society resulting from allegations of appellant John P.'s acts of animal cruelty and supervision records from the facility where appellants were observed visiting with Lauren's older sibling. Dr. Graves stated that appellants both signed releases enabling him to review their prior medical records. Dr. Graves explained that he would not render an opinion based on any of the records he reviewed in this case without having conducted clinical interviews of the parents. He further stated that he would not have provided the specific results of the psychological tests he administered without a court order.
 {¶ 29} When appellant again argued to the trial court that he should have been provided copies of the results of the psychological tests, the court asked whether he had requested the documents as part of discovery. Appellant admitted that he had not asked for copies of the actual tests and results but conceded that on May 28, 2003, he had received a copy of Dr. Graves's report discussing the results of the tests. On appeal, appellant again argues that he was not provided copies of the testing materials which might have enabled him to have Dr. Graves's opinion reviewed by another expert, and that he should have been provided materials explaining the psychologist's interpretation of the tests. Again, we note that appellant was provided a copy of the doctor's report interpreting the tests and that appellant did not request any additional information in between May 28, 2003, when he received a copy of the report, and the date of trial. It is clear that the psychologist based his opinions heavily on his clinical observations of both parents, which he described as "critical" to his evaluations.
 {¶ 30} We further note that rulings concerning the admissibility of expert testimony are within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. Frank v. Vulcan Materials,Company (1988), 55 Ohio App.3d 153, 155. Similarly, an appellate court will not reverse a trial court's ruling as to the qualifications of an expert witness absent an abuse of discretion. Kitchens v. McKay (1987), 38 Ohio App.3d 165, 169.
 {¶ 31} Based on the foregoing, we find that the trial court did not err by allowing Dr. Graves's testimony and, accordingly, appellant John P.'s first and second assignments of error are not well-taken.
 {¶ 32} In his third assignment of error, appellant John P. asserts that the trial court erred by denying his motion to continue the trial. Appellant asserts that the trial court should have granted a continuance so that he could hire his own expert witness to conduct a psychological evaluation and review the methods and opinions of Dr. Graves. The record reflects that eight days before trial appellant filed a motion to vacate the July 16, 2003 trial date which had been set on May 29, 2003. The record further shows that the trial court had ordered the parties to attend and cooperate with a mediation hearing on July 7, 2003, but that appellant's counsel refused to allow appellant to mediate. Appellant's motion to vacate was denied, and one day before trial, appellant filed another motion in limine or to vacate trial date. The matter of the second request to vacate was addressed by the court on the morning of trial. At that time, counsel for appellant stated that he no longer was requesting a continuance based on the reasons set forth in his second motion, but that he still wished a continuance for the purpose of having a hearing to qualify Dr. Graves as an expert. The trial court stated that such an inquiry could be made in court that day and denied the second motion for a continuance.
 {¶ 33} The grant or denial of a motion for continuance lies within the sound discretion of the trial court. State v. Unger
(1981), 67 Ohio St.2d 65, 67. An appellate court will not reverse the denial of a continuance unless there has been an abuse of discretion. Id. The record herein shows that the trial court questioned appellant's counsel at length as to the reasons for requesting a continuance and as to any possible prejudice that might result from proceeding as scheduled. Upon due consideration, the trial court determined that appellant's concerns about the expert witness's qualifications could be addressed during trial. We find that the trial court did not abuse its discretion by denying appellant's request, and his third assignment of error is not well-taken.
 {¶ 34} Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to equally to appellants.
JUDGMENT AFFIRMED.
Knepper, J., Pietrykowski, J. and Singer, J. concur.