{¶ 1} Appellant appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, adjudicating her daughter, S.J.J., a dependent child. We affirm the trial court's decision.
 {¶ 2} Appellant is the mother of S.J.J., who was born September 24, 2004. Appellant has been diagnosed as psychotic and paranoid schizophrenic, and has been hospitalized on several occasions for treatment. She was first hospitalized for psychiatric treatment when she was 15, and most recently in 1994. From 1980 through 1990, appellant was treated at an in-patient mental health institution. She presently takes several prescribed medications to manage her mental health conditions. She lives with S.J.J.'s father, D.J., who has been diagnosed with epilepsy.[1]
 {¶ 3} On January 5, 2005, Butler County Children Services Board ("BCCSB") received a referral regarding S.J.J. The referral alleged that appellant reported that D.J. had shaken the three-month-old child and threatened to throw her from one room into another. BCCSB case worker Jennifer Tye went to the home that same day. Appellant told Tye that D.J. had shaken S.J.J. a few weeks earlier. Appellant told Tye that she had taken the child for a medical checkup after the incident, but that she had not reported the incident to the doctor. Rather, she told the doctor that the child had diarrhea, and blood in her stool and urine. Subsequent testing did not reveal any injuries, or the presence of blood in either her stool or urine.
 {¶ 4} As a result of this conversation, S.J.J. was transported to a hospital where she was examined. No signs of abuse were found and S.J.J. was determined to be in good health. However, Tye remained concerned for S.J.J.'s welfare. At the hospital, appellant altered the story regarding the incident when retelling it to medical personnel. At one point, appellant told Tye that D.J. may have stuck toothpicks in the child's eyes. Appellant also became verbally aggressive with the doctors and nurses attending to S.J.J., and objected to the administration of tests necessary to determine S.J.J.'s health. Due to the nature of the initial referral and appellant's erratic behavior, S.J.J. was temporarily removed from appellant's care.
 {¶ 5} On January 6, 2005 BCCSB filed a complaint alleging that S.J.J. is a dependent child pursuant to R.C. 2152.04(B) and (C). The matter proceeded to trial at which Tye testified regarding the January 5, 2005 incident. Appellant also testified regarding the incident and her undisputed mental health issues. She testified that, in addition to her regular medications, she had taken morphine that day, prescribed for her following S.J.J.'s cesarean birth. She testified that D.J.'s verbally abusive behavior had prompted her to make the allegation that D.J. shook the child. However she later testified that he had shaken the baby, but only slightly, and she was concerned that he might in the future shake her harder because he could be "kind of explosive." She also testified that the incident could have occurred while D.J. was suffering an epileptic seizure. She could offer no explanation for the allegation that he had stuck toothpicks in S.J.J.'s eyes. She testified that she needs help caring for S.J.J. and expressed her desire for her sister to help her; appellant also testified that she does not communicate with her sister. She testified that she appreciates that D.J.'s sister was caring for the child, but that she doesn't get along with her.
 {¶ 6} Appellant's father testified that appellant has tried to commit suicide, stabbed her mother, and has hallucinations when she does not take her medications. He testified that appellant had been taking her medications regularly in the past year or two and he had not recently observed any erratic behavior on her part. D.J. testified that his epilepsy is controlled by medication, that he had not had a seizure in the past two years, and that he never harmed S.J.J. Regarding the specific allegation that he had shaken the baby he testified that he "must've moved her a little bit,"but he "wasn't trying to shake her or jerk her."
 {¶ 7} Based on this evidence, the trial court adjudicated S.J.J. a dependent child. Appellant appeals, raising a single assignment of error, alleging that the trial court erred by finding that S.J.J. is a dependent child pursuant to R.C. 2151.04(B) and (C).
 {¶ 8} R.C. 2151.04(B) and (C), the sections under which BCCSB brought its dependency action, state that a "dependent child" means any child:
 {¶ 9} "(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian or custodian; [or]
 {¶ 10} "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"
 {¶ 11} A trial court's dependency determination must be supported by clear and convincing evidence. See R.C. 2151.35(A)(1); Juv.R. 29(E)(4);In re A.P., Butler App. No. CA2005-10-425, 2006-Ohio-2717, ¶ 23. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id., citing In re Ament (2001), 142 Ohio App.3d 302,307. An appellate court neither weighs the evidence nor judges the credibility of the witnesses; rather, appellate review of a trial court's dependency determination "is limited to whether sufficient credible evidence exists to support the trial court's determination."Ament at 307, citing In re Pieper Children (1991), 74 Ohio App.3d 714,722.
 {¶ 12} "The determination that a child is dependent requires no showing of fault on the parent's part." In re Bolser (Jan. 31, 2000), Butler App. Nos. CA99-02-038 and CA99-03-048, 2000 WL 146026, *4. Rather, the focus is on the child's condition or environment, and whether the child was without adequate care or support. SeeAment at 307. However, a court may consider a parent's conduct insofar as it forms part of the child's environment. In re Alexander C.,164 Ohio App.3d 540, 2005-Ohio-6134, ¶ 51, citing In re Burrell (1979), 58 Ohio St.2d 37, 39. While the child's present "condition or environment" is the focus of a dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." In re Burchfield (1988),51 Ohio App.3d 148, 156; In re Campbell (1983), 13 Ohio App.3d 34, 36.
 {¶ 13} Having reviewed the record, we find sufficient, credible evidence supports the trial court's determination that S.J.J. is a dependent child as defined by statute. Appellant's mental state admittedly prevents her from providing adequate care for the child. She testified that she requires assistance caring for S.J.J. and would have to depend in part on "community support from the police and things." She testified that D.J. is inconsistent in his willingness to assist her with S.J.J. and has told her that he didn't want to care for the child any longer. She also testified that D.J.'s epilepsy causes him to "zone out" for periods of time.
 {¶ 14} Appellant made accusations that D.J. physically abused the child, yet failed to seek appropriate treatment until weeks later when BCCSB became involved. Her allegations, if true, demonstrate that S.J.J. suffered actual harm in the home and was not provided with appropriate treatment. If false, the accusations demonstrate appellant's inability to make appropriate decisions regarding S.J.J.'s care. While appellant's testimony suggests that she is diligently attempting to manage her mental illness, the totality of the evidence supports the conclusion that she is presently unable or unwilling to provide adequate parental care. Consequently, the child's environment "is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." The assignment of error is overruled.
 {¶ 15} Judgment affirmed.
[1] D.J. is not a party to this appeal.