OPINION
{¶ 1} Appellants, Todd and Nina G., separately appeal a decision of the Butler County Court of Common Pleas, Juvenile Division, adjudicating their son dependent and awarding temporary custody to appellee, the Butler County Children Services Board *Page 2 
("Children Services"). For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} Todd and Nina G. are the parents of T.G., a minor child born on February 24, 2005. Children Services initially filed a complaint on March 3, 2005 alleging that T.G. was a dependent child. The adjudicatory hearing was conducted on October 20, 2005. On October 31, 2005, the magistrate issued a decision finding T.G. not dependent and dismissing Children Services' complaint.
 {¶ 3} The following day, November 1, 2005, Children Services filed a new complaint alleging that T.G. was a dependent child. After a hearing, the magistrate issued a decision on March 14, 2007 adjudicating T.G. dependent and finding that Children Services failed to make reasonable efforts to prevent the removal of T.G. from his home or to enable his return. Nina, Todd, and Children Services filed objections to the magistrate's decision. On June 15, 2007, the trial court released its decision overruling Nina's and Todd's objections but sustaining Children Services' objection to the magistrate's reasonable efforts finding.
 {¶ 4} Todd and Nina separately appeal. The cases were consolidated for review, with Todd and Nina raising a combined total of five assignments of error. For the sake of expediency, we shall consolidate related assignments of error and address the assignments slightly out of order.
 {¶ 5} Todd's Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT VIOLATED FATHER'S CONSTITUTIONAL RIGHTS, VIOLATED RES JUDICATA, AND PREJUDICIALLY ERRED WHEN IT ADMITTED HEARSAY EVIDENCE AND THEN FOUND THE CHILD TO BE DEPENDENT BECAUSE THE COURT BASED ITS DECISION ENTIRELY UPON HEARSAY AND A HYPOTHETICAL OPINION FOR WHICH THERE WAS NO FACTUAL OR EVIDENTIARY BASIS, UPON THE EXISTENCE OF A CHILD'S ALLEGED SPECIAL NEEDS FOR WHICH NO PROOF WAS *Page 3 
OFFERED AT TRIAL, AND FURTHER EXPRESSLY UPON NON-EXISTENT SUPPORTIVE DOCUMENTARY EVIDENCE, AS A RESULT OF WHICH, THE COURT FAILED TO HAVE EVIDENCE SUFFICIENT TO SUPPORT ITS FINDINGS OF DEPENDENCY AND REASONABLE EFFORTS."
 {¶ 7} Todd raises a number of unrelated arguments under his first assignment of error. First we address his argument that the second complaint was barred by the doctrine of res judicata. Todd notes that both complaints allege poor housekeeping and stresses that, in the first action, the condition of the parents' home did not rise to the level of inadequate parental care to support a dependency finding. Therefore, argues Todd, the issue has already been decided and is barred from re-litigation.
 {¶ 8} The doctrine of res judicata, or claim preclusion, bars the re-litigation of the same cause of action against the same defendant where there has been a final judgment on the merits. Wilson v.Hatter (June 23, 1986), Warren App. No. CA85-04-014, at 6. Collateral estoppel, or issue preclusion, bars the re-litigation of an issue that has been litigated and determined in a prior case based upon a different cause of action. Id. In Ohio, both doctrines require that the proceedings involve either the same parties or their privies. Id.
 {¶ 9} The first complaint covered a time period prior to March 3, 2005, the day it was filed. By contrast, the second complaint covered the time period from the day after the first complaint was filed to the day the second complaint was filed. This was supported by paragraph six of the second complaint, which raised housekeeping concerns "for the past seven months," or roughly the period from the day after the first complaint was filed up until the day the second complaint was filed. Thus, the second complaint was not making the same claim or raising the exact same issue as the first, as it challenged the housekeeping for a different time period. Regardless, the housekeeping issue is of little import as the trial court did not rely upon the home conditions to support its dependency finding in the present *Page 4 
matter.
 {¶ 10} Todd also argues that he and Nina were found to be capable of parenting T.G. under the facts as stated in the first complaint, so that issue is barred from re-litigation as well. However, the second complaint raised new allegations related to parenting that were not contained in the first complaint. "Where there has been a change in the facts since a decision was rendered in an action, which either raises a new material issue or which would have been relevant to the resolution of a material issue involved in the earlier action, neither the doctrine of res judicata nor the doctrine of collateral estoppel will bar litigation of that issue in a later action." State ex. rel. WestchesterEstates, Inc. v. Bacon (1980), 61 Ohio St.2d 42, paragraph two of the syllabus.
 {¶ 11} The new information in the second complaint related primarily to both parents' respective mental health conditions. The complaint cited psychological evaluations performed on Nina and Todd in March 2005, on dates after the first complaint was filed. It also alleged that Todd was referred for psychological services and did not follow through with any treatment. The complaint also attacked Nina and Todd's slack performance in parenting classes. Finally, the complaint alleged that T.G. had developmental delays and medical concerns.
 {¶ 12} The first complaint did not implicate the parents' mental health conditions or T.G.'s special needs. It narrowly implicated Todd and Nina's parenting abilities by citing to three specific incidents where they allegedly did not handle T.G. in a safe manner. However, the first complaint did not allege that the parents had mental health deficiencies or that T.G. had special needs. Clearly, the second complaint raised new issues and was not barred by res judicata or collateral estoppel.
 {¶ 13} We next address Todd's argument that the trial court improperly relied upon inadmissible hearsay and a hypothetical expert opinion to support the dependency finding. *Page 5 
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). When such out-of-court statements are not offered for their truth, they are not hearsay. State v. Echavarria, Butler App. No. CA2003-11-300,2004-Ohio-7044, ¶ 9.
 {¶ 14} At the hearing, the testimony of two witnesses directly referenced T.G.'s special needs. Karen Lavender, a 22-year family life educator for the Development of Living Skills ("DLS") program, stated that DLS evaluated the children in the program. She testified that DLS had determined that T.G. had some developmental delays and had tailored his lessons accordingly. Upon objection by Todd's attorney, however, the trial court limited Ms. Lavender's testimony to establishing how she and DLS worked with the family. The court stated that the testimony was not to be considered to prove that T.G. had developmental delays.
 {¶ 15} Dr. William Walters, the clinical forensic psychologist who administered psychological evaluations to Nina and Todd in August 2006, referenced similar information. Dr. Walters testified that, prior to trial, he was given background information stating that T.G. had a seizure disorder, some visual difficulties, problems with nutrition and waking, and possible developmental and speech delays. Dr. Walters opined that, given his respective diagnoses of Todd and Nina (to be discussed more in depth later) and the background information on T.G.'s medical conditions, someone with Todd's and Nina's respective diagnoses could not sufficiently parent a child with conditions similar to T.G.'s. The trial court admitted this testimony over objections by Todd's attorney, who said it was based upon hearsay. The trial court allowed the evidence of T.G.'s medical problems for the limited purpose of laying a foundation for later questions to Dr. Walters, and not to prove that T.G. had these medical problems. As will be discussed below, there was other evidence from which the court could conclude that T.G. had special needs. *Page 6 
 {¶ 16} We find that the trial court properly limited the above testimony. Because the evidence was not considered for the truth of the matters asserted, it was not hearsay. See Evid.R. 801(C);Echavarria at ¶ 9. Furthermore, Dr. Walters' opinion in response to hypothetical questions, based upon evidence in the record, was permissible under Evid.R. 705.[1] See, e.g., In re Lauren P., Lucas App. No. L-03-1252, 2004-Ohio-1656, ¶ 27.
 {¶ 17} Finally, Todd disputes the finding that Children Services made reasonable efforts to prevent the removal of T.G. from his home or to enable his return. In situations where a child services agency did not have prior contact with a child but removes the child from his home during an emergency in which the child could not safely remain in the home, a trial court may determine that the agency made reasonable efforts to prevent the removal from the home or to enable the child to return safely home. R.C. 2151.419(A)(1). The child's health and safety are paramount considerations in making such a determination. Id. "[T]he issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." In reK.M., Butler App. No. CA2004-02-052, 2004-Ohio-4152, ¶ 23.
 {¶ 18} After reviewing the record, we agree that Children Services engaged in reasonable efforts to prevent T.G.'s removal or enable his return. Children Services caseworker Jennifer Tye testified that the agency had been involved with the family since March 2005. Ms. Tye regularly visited with the parents and worked with them to improve their parenting skills. She referred Todd to Transitional Living for mental health services including psychiatric care, but to her knowledge he did not follow through with her recommendation. Children Services also permitted the parents visitation with T.G. in their *Page 7 
home in an amount greater than that normally granted. Ms. Tye also referred the parents to the DLS program, where they began working with Ms. Lavender.
 {¶ 19} Children Services also enlisted the help of the Help Me Grow and Early Intervention programs to monitor T.G.'s development and improve his skills. Early Intervention arranged for bi-weekly visits with T.G. in order to accomplish this and had T.G. work with a physical therapist. Although these services were performed in the foster home, they were aimed at improving T.G.'s skills and development for his overall benefit. In addition, Nina and Todd were consistently provided with the paperwork from these services, which Ms. Lavender incorporated into their parenting lessons.
 {¶ 20} Ms. Lavender worked closely with Nina and Todd on topics such as parent/child interaction, money management, food and nutrition, home safety, using resources, and self esteem. DLS tailored some of the lessons to meet T.G.'s needs. Ms. Lavender would engage in role playing with the parents as well as lesson recall to help implement the lessons. She reluctantly terminated the program upon being told by Children Services that they were no longer welcome in the home according to communications from Todd's attorney. Both Ms. Tye and Ms. Lavender recommended that the parents be given more in-depth training. In addition, Ms. Lavender was prepared to request an increase in the parents' visitation time with T.G.
 {¶ 21} We conclude that the above evidence amply demonstrates that Children Services made reasonable efforts to prevent the removal of T.G. from his home or to enable his return. Todd's first assignment of error is overruled.
 {¶ 22} Todd's Assignment of Error No. 2:
 {¶ 23} "THERE WAS INSUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT A FINDING OF DEPENDENCY OR REASONABLE EFFORTS, AND AS A RESULT, THE TRIAL COURT'S ORDER ALSO CONSTITUTES AN ABUSE OF DISCRETION CONTRARY *Page 8 
TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 24} Nina's Assignment of Error No. 1:
 {¶ 25} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO DISMISS."
 {¶ 26} Nina's Assignment of Error No. 2:
 {¶ 27} "THE STATE FAILED TO MEET ITS BURDEN OF PROOF BY CLEAR AND CONVINCING EVIDENCE THAT T.G. IS A DEPENDENT CHILD."
 {¶ 28} The above assignments of error challenge the trial court's dependency finding as unsupported by the requisite clear and convincing evidence. The assignments also assert that the dependency finding was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 29} The trial court in the present matter based its dependency finding on R.C. 2151.04(B), which defines a "dependent child" as one "[w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian[.]" A trial court's dependency determination must be supported by clear and convincing evidence. See R.C. 2151.35(A)(1); Juv.R. 29(E)(4); In reS.J.J., Butler App. No. CA2006-02-021, 2006-Ohio-6354, ¶ 11. Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Id.
 {¶ 30} The trial court found the following to be clear and convincing evidence of T.G.'s dependency: T.G. has a seizure disorder, reflux, and is developmentally delayed; the parents were making slow progress in learning parenting skills and had to be repeatedly instructed on how to care for T.G.; Nina was evaluated and found to have cognitive limitations; Todd was evaluated and found to have notable psychological issues including narcissistic personality disorder and depression; and Dr. Walters opined that Todd and Nina currently appear incapable of caring for a child with T.G.'s needs due to their respective *Page 9 
mental health conditions.
 {¶ 31} We must determine whether sufficient, credible evidence exists to support the trial court's decision. In re S.J.J. at ¶ 11. In making this determination, this court neither weighs the evidence nor assesses the credibility of the witnesses. Id.
 {¶ 32} There is no doubt that the evidence supports that Todd and Nina each have mental health issues. Dr. Walters, who conducted the August 2006 interviews and psychological evaluations, provided expert testimony in support. He diagnosed Todd with depression, adjustment disorder, narcissistic personality disorder (inflated self esteem, tendency to put blame on others), and paranoia. He diagnosed Nina with mild depression, borderline mental retardation, and adjustment disorder. Dr. Walters' evaluations and testimony provided competent, credible evidence that both parents have mental health limitations and, as a result, both would benefit from further parenting training.
 {¶ 33} In addition, testimony from Ms. Tye and Ms. Lavender supports that the parents are slow to learn and implement skills and need much more parenting training. There is also some concern that Todd does not fully appreciate T.G.'s needs. Ms. Lavender testified that, during her visits at the home, Todd would often refuse to participate or try new things. Dr. Walters also testified that Todd downplayed T.G.'s needs by stating "We * * * are all late developers, it's not a problem."
 {¶ 34} Ms. Tye and Ms. Lavender also testified that the parents were slow to embrace their parenting classes. The parents cancelled 11 classes and completed 16 classes. Ms. Lavender noted that their participation and progress significantly improved in the weeks prior to trial. However, she feared that such results were prompted by the impending trial date and would not last after trial. As stated, although the family had shown improvement, Ms. Tye and Ms. Lavender recommended that the parents submit to additional classes and more in-depth training. *Page 10 
 {¶ 35} Compounding the problem is that T.G. is a special needs child. Todd and Nina argue that T.G.'s special needs were not proven by sufficient, admissible evidence. We have already determined that the direct testimony offered by Dr. Walters and Ms. Lavender about T.G.'s special needs was limited so as not to constitute hearsay. As such, that testimony cannot be considered to prove T.G. has special needs. The record, however, contains other evidence from which the trial court could conclude that T.G. has special needs.
 {¶ 36} As mentioned, Ms. Tye testified that T.G. was involved in the Early Intervention and Help Me Grow programs. Help Me Grow works with parents to monitor the child's development and help improve his developmental skills. At the time of the second complaint, Help Me Grow was monitoring T.G. and Early Intervention was involved in improving his skills. Ms. Tye also stated that T.G. had seizures, saw a pediatrician and a neurologist regularly, and was seeing a physical therapist and an ophthalmologist.
 {¶ 37} Todd testified that the family had been informed that T.G. had special needs including seizures and developmental delays. As stated, Todd acknowledged to Dr. Walters that T.G. was a late developer, but downplayed the issue. Todd also admitted that he witnessed T.G. have a seizure on one occasion, and that T.G. had to be taken to the hospital.
 {¶ 38} Although the record does not contain direct medical testimony of T.G.'s special needs, the fact that the child was consistently seeing a pediatrician, neurologist, ophthalmologist, and physical therapist and was involved in Help Me Grow and Early Intervention indicates that he suffered from some significant health problems. A child developing normally would not require so numerous and repeated services from these doctors and programs. As Dr. Walters opined in his hypothetical, Nina and Todd, with their respective mental limitations, are both incapable of caring for a child with such needs.
 {¶ 39} A case out of the Tenth Appellate District lends support to the proposition that *Page 11 
nonmedical evidence of special needs is admissible to support a dependency determination. In the case In re Malone, Franklin App. No. 03AP-489, 2003-Ohio-7156, mother Timashay Malone appealed the decision of the trial court finding her son, Deion, dependent and granting temporary custody to the child's paternal grandmother. The Tenth District found that the trial court's dependency determination was supported by a number of factors, including that Malone was likely to be unable to handle the child's special needs. Id. at ¶ 19-20.
 {¶ 40} There was testimony in the case by the children services caseworker that Malone suffered from a learning disability. This testimony was based upon a report not in evidence, and the fact that Malone received social security checks for her disability. The caseworker also testified that Deion had been assessed and diagnosed with developmental delays. Her testimony was again based upon reports not in evidence, as well as her own observations of the child. The caseworker was not a doctor or psychologist. The caseworker opined that Malone was unable to understand her own or Deion's disabilities, and that Malone was unable to address Deion's special needs.
 {¶ 41} The trial court also heard testimony from Deion's paternal grandmother, Lillian Chatman, who had taken care of Deion since birth. Chatman stated that Deion had very poor motor and language skills, that he had not been assessed by Franklin County MRDD yet due to his age, but that he displayed many signs of mental retardation and developmental delays. Chatman also testified that Franklin County MRDD came to her house twice a month.
 {¶ 42} Although there was no direct medical testimony as to Deion's special needs, the Malone court found that his special needs were supported by other evidence in the record:
 {¶ 43} "With regard to Borjon's [(the caseworker's)] testimony that Deion had been `diagnosed' with developmental delays, although the magistrate did comment on Deion's developmental problems, there is no indication that she relied upon Borjon's testimony with *Page 12 
regard to the absent report. There was substantial other evidence presented on Deion's developmental delays. Borjon testified regarding possible developmental problems she noticed during her supervised visitations. Chatman also testified regarding Deion's developmental delays based upon her personal observations of Deion and the experiences of others who have dealt with children with developmental problems. She extensively discussed examples of Deion's behavior that made her suspect a problem. Chatman also testified that Franklin County MRDD and Help Me Grow have already started working with her and Deion. [Malone] also acknowledged Deion's delays. Thus, the trial court clearly had competent evidence to note Deion's developmental problems even without Borjon's testimony based upon the unadmitted reports." Malone, 2003-Ohio-7156
at ¶ 25.
 {¶ 44} The evidence relied upon by the Malone court to establish Deion's special needs is similar to that relied upon by the trial court in the present matter. Caseworker Ms. Tye testified that T.G. regularly saw a pediatrician, neurologist, physical therapist, and ophthalmologist. She also stated that T.G. was receiving services from Help Me Grow and Early Intervention. Furthermore, Todd admitted that T.G. had seizures and was developmentally delayed.
 {¶ 45} As in Malone, the fact that T.G. was a special needs child was not the sole basis for the trial court's dependency determination. Nina's cognitive limitations and Todd's psychological issues were key factors in the decision. Their respective mental health conditions impacted their ability to implement the parenting classes, and there was ample testimony that they were in need of much more parenting training. In addition, as stated, there was also concern surrounding the fact that they were slow to embrace the classes and that the only reason their interest had increased in the weeks prior to trial was because trial was approaching.
 {¶ 46} After thoroughly reviewing the record, we conclude that the trial court's decision *Page 13 
finding T.G. to be a dependent child was supported by sufficient, credible evidence. Todd's second assignment of error is overruled. Nina's first and second assignments of error are overruled.
 {¶ 47} Todd's Assignment of Error No. 3:
 {¶ 48} "THE TRIAL COURT AND/OR BCCSB DISCRIMINATED AGAINST APPELLANT AND/OR VIOLATED THE AMERICANS WITH DISABILITIES ACT WHEN BCCSB FAILED TO MAKE A REASONABLE ACCOMMODATION FOR THE PARENTS' INTELLECTUAL LIMITATIONS BY FAILING TO MAKE REASONABLE EFFORT[S] WHICH TOOK THOSE LIMITATIONS INTO CONSIDERATION AND THE COURT STILL FOUND THAT REASONABLE EFFORTS HAD BEEN MADE."
 {¶ 49} Todd contends that Children Services' failure to provide him and Nina with more directed, hands-on training violated the Americans with Disabilities Act[2] in view of the actual or perceived disabilities suffered by both parents. According to the record, Todd did not raise this issue at the trial court level. Generally, a party may not raise for the first time on appeal any issue or error that the party could have called to the trial court's attention at a time when the trial court could have ruled on the issue, or corrected the error, or avoided the error altogether. State v. Awan (1986), 22 Ohio St.3d 120,122. Todd has therefore waived the issue for purposes of appeal. Id. See, also, In re Andy-Jones, Franklin App. Nos. 03-AP-1167,-1231,2004-Ohio-3312, ¶ 23.
 {¶ 50} Todd's third assignment of error is overruled.
 {¶ 51} Judgment affirmed.
BRESSLER and POWELL, JJ., concur.
[1] Evid.R. 705 provides: "The expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
[2] Section 12101 et seq., Title 42, U.S.Code. *Page 1