[Cite as *In re W.C.H.*, 2015-Ohio-54.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


IN THE MATTER OF:                :

    W.C.H.                            :          CASE NO.   CA2014-02-057

                         :          O P I N I O N
                                        1/12/2015

                                 :

                                 :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2013-0343


Brandabur & Bowling Co., L.P.A., Kyle M. Rapier, 315 Monument Avenue, Hamilton, Ohio 45011, for appellant, W.H.

Timothy Carlson, Fifth Third Bank Center, Suite 220, Hamilton, Ohio 45011, for A.M.

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Christina L. Minch, 7723 Tylers Place Blvd., #129, West Chester, Ohio 45069, guardian ad litem


**PIPER, J.**

{¶ 1}   Appellant, W.H. (Father), appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, adjudicating his child, W.C.H., dependent.

{¶ 2}   A.M. (Mother) and Father were married at one time, and W.C.H. was born issue

of the marriage. After Father and Mother divorced, the two had a shared parenting plan regarding the care and custody of W.C.H, who is mildly autistic. However, Mother began to deny Father the ability to have parenting time with the child after Detective Paul Davis of the Hamilton Police Department informed her that Father was being investigated on allegations that he sexually abused his nephew, K.A. Once Mother stopped allowing parenting time, Father filed a motion asking the court to find Mother in contempt for her denial of parenting time.

{¶ 3} Soon thereafter, the state filed a complaint alleging that W.C.H. was a dependent child because the sexual abuse allegations regarding K.A. had been substantiated by Butler County Children Services (BCCS). The state included in its complaint that criminal charges would soon be brought against Father in regard to his sexual abuse of K.A. However, the prosecutor had not yet filed criminal charges because K.A. was mentally unstable and needed to become more stable before becoming involved in the criminal proceedings.

{¶ 4} As a result of the substantiated sexual abuse case involving Father's nephew, W.C.H. was interviewed at the Cincinnati Children's Hospital Medical Center, Mayerson Center for Safe and Healthy Children. During the interview, W.C.H.'s behavior would change when asked questions about Father. As police continued to investigate the criminal charges against Father, the state dismissed and re-filed the dependency complaint. The re-filed complaint alleged essentially the same basis for dependency—that Father was the perpetrator in a substantiated sexual abuse case against his nephew. However, the complaint updated the juvenile court that K.A. was still not mentally stable enough to testify at grand jury, but reiterated that Detective Davis continued to assert that criminal charges would be filed against Father as soon as K.A. was able to proceed.

{¶ 5} A magistrate held a hearing on the complaint over two days in October 2014.

The first day of the hearing was October 9, 2013 and the second was October 23, 2013. On the first day of the hearing, the state offered into evidence statements from three of Father's family members who spoke to police about the sexual abuse perpetrated by Father. One statement was from K.A. (Father's nephew), another was from A.H. (Father's nephew and K.A.'s brother), and a third was from B.H. (Father's brother, who is father to K.A. and A.H.). The three statements were given by K.A., A.H., and B.H. to Detective Davis as part of his investigation of Father. Father objected to the admission of the statements as impermissible hearsay, but the magistrate admitted the statements pursuant to the business records exception.

{¶ 6} The night before the second day of the hearing, B.H. (Father's brother) recanted his statement regarding Father sexually abusing him. According to the discussion at the second day of the hearing, B.H. was in the hospital and his family was there with him. He recanted his statement about the abuse, and signed an affidavit in the presence of Father's attorney recanting his statement. However, neither of B.H.'s children recanted their statements. While the magistrate discussed the recantation and heard witness testimony regarding the recantation, the statements had already been admitted on the first day of the hearing.

{¶ 7} After the hearing concluded, the magistrate found W.C.H. to be a dependent child. Father filed an objection to the magistrate's decision, which the juvenile court overruled. Father now appeals the juvenile court's decision adjudicating W.C.H. dependent, raising the following assignments of error. However, and because we find Father's third assignment of error dispositive of this appeal, we will address the assignments out of order.

{¶ 8} Assignment of Error No. 3:

{¶ 9} THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} Father argues in his third assignment of error that the juvenile court's decision adjudicating W.C.H. dependent was against the manifest weight of the evidence.

{¶ 11} A trial court's dependency determination must be supported by clear and convincing evidence. *In re S.J.J.*, 12th Dist. Butler No. CA2006-02-021, 2006-Ohio-6354, ¶ 11. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Id.* An appellate court neither weighs the evidence nor judges the credibility of the witnesses; rather, appellate review of a trial court's dependency determination "is limited to whether sufficient credible evidence exists to support the trial court's determination." *In re S.M.*, 12th Dist. Madison No. CA2006-08-030, 2007-Ohio-2297, ¶ 12.

{¶ 12} Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. *In re Pieper Children*, 85 Ohio App.3d 318, 327 (12th Dist.1993). When reviewing a trial court's decision on a manifest weight of the evidence basis, an a appellate court is guided by the presumption that the findings of the trial court were correct so that reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. *In re G.S.*, 12th Dist. Franklin No. 05AP-1321, 2006-Ohio-2530, ¶ 4.

{¶ 13} The state alleged that W.C.H. was dependent according to R.C. 2151.04(B) or (C), which defines a dependent child respectively as one "who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian," or one "whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."

{¶ 14} The determination that a child is dependent requires no showing of fault on the parent's part. *In re Bolser*, 12th Dist. Butler Nos. CA99-02-038, CA99-03-048, 2000 WL

146026, *4 (Jan.31, 2000). Rather, the focus is on the child's condition or environment, and whether the child was without adequate care or support. *Id.* However, a court may consider a parent's conduct insofar as it forms part of the child's environment. *In re S.J.J.*, 2006-Ohio-6354. While the child's present "condition or environment" is the focus of a dependency determination, "the law does not require the court to experiment with the child's welfare to see if the child will suffer great detriment or harm." *Id.* at ¶ 12.

{¶ 15} A juvenile court's adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child. *In re B.J.*, 12th Dist. Butler No. CA2011-10-192, 2012-Ohio-3127, ¶ 28. Such adjudication does not, however, permanently foreclose the rights of either parent because adjudication is not a termination of all residual parental rights, privileges, and responsibilities. *Id.*

{¶ 16} While Father's first two assignments challenge the juvenile court's admission of the three statements regarding Father's alleged sexual abuse of his family members, we need not determine whether those statements were properly admitted, as there was clear and convincing evidence presented that W.C.H. was dependent notwithstanding the statements. Even without any consideration of the statements, we find that the juvenile court had clear and convincing evidence to adjudicate W.C.H. dependent, and that the juvenile court's decision was supported by the manifest weight of the evidence.

{¶ 17} The juvenile court heard testimony from Gary Herbert, an intake worker with BCCS, who specializes in investigating sexual abuse cases. Herbert testified that he became involved with W.C.H. in September 2012 when allegations were made that W.C.H. had sexual contact with Father. Herbert testified that while those allegations were unsubstantiated, he was also a part of another investigation regarding Father sexually abusing K.A., and that those allegations were found to be substantiated. Herbert defined substantiated as "there was substantial evidence to support the allegation."

{¶ 18} Julie Deible, a caseworker with BCCS, testified that she investigates sexual abuse cases, and that she became involved with W.C.H. because she worked on companion cases involving Father as a perpetrator of sexual abuse. Deible testified that she worked on the cases involving K.A. and A.H., and that through those cases, she became aware of Father and W.C.H. Deible testified that Father was the alleged perpetrator in the sexual abuse cases involving Father's nephews and that the abuse allegations were substantiated. When asked to define substantiated, Deible stated that "to me it means we believe that it happened."

{¶ 19} Deible testified that the substantiation of allegations was based, on part, with her interview with K.A., and that as part of her investigation, she also spoke with W.C.H. regarding Father. Deible testified that when she spoke to W.C.H. about his home life, he was animated and engaged, but that his behavior changed when he was asked questions about Father. Deible also testified that she was aware that there was an ongoing criminal investigation occurring, parallel to BCCS's investigation of Father.

{¶ 20} Emily Thompson, a BCCS caseworker, testified that she filed the second, updated, complaint alleging W.C.H.'s dependency based on information she received from Detective Davis regarding the criminal investigation of Father. Thompson testified that the information contained in the second complaint was accurate, and completed to the best of her knowledge that the criminal investigation of Father for sexual abuse was ongoing.

{¶ 21} Detective Davis then testified that he had been a detective for 11 years, and that he became familiar with Father regarding accusations of "multiple child rapes," regarding K.A. and B.H., as well as gross sexual imposition of A.H. Detective Davis testified that as a result of his interviews with K.A., B.H., and A.H., he continued his investigation of Father. Detective Davis also testified that he observed W.C.H.'s interview, and that he observed W.C.H.'s demeanor "change dramatically" and that W.C.H. "shut down" when he was asked

questions about Father.

{¶ 22} Detective Davis indicated that his investigation was ongoing, but that no criminal charges had been filed because K.A. was not mentally stable enough to move forward with the criminal process. Detective Davis testified that K.A. began cutting himself, and that officials feared K.A.'s suicide if he were forced to move forward without being stable enough. Even so, Detective Davis testified that the criminal case against Father would progress, that he had definitive plans to pursue criminal charges, and that in his opinion, Father would be charged in a "timely manner."

{¶ 23} Father then testified, as if on cross-examination, after being advised of his Fifth Amendment rights against self-incrimination. Father testified that none of the allegations being made against him were true, and that the allegations were only levied because his mother took B.H. out of her will. When the state asked whether Father was innocent of the allegations, he replied, "I go with what my lawyer tells me to do. I have an attorney."

{¶ 24} Mother also testified, and stated that W.C.H. exhibited unusual behavior, and that the child began kissing her neck and kissed her "all the way down." Mother testified that she told W.C.H. to stop and that such action was inappropriate, but that W.C.H. kissed Mother inappropriately "several times." When Mother talked to W.C.H. about these actions, Mother testified that W.C.H. told her that the kissing all the way down "was just something that him and his daddy do. He was just loving on me."

{¶ 25} After hearing the testimony and considering the evidence, the juvenile court determined that W.C.H. was dependent. We find that the juvenile court's adjudication is supported by the manifest weight of the evidence. Without any consideration of the three statements, the juvenile court heard ample testimony regarding the allegations against Father, and that such allegations were found to be substantiated by BCCS. The court also considered that Detective Davis testified that Father would be facing criminal charges once

K.A. was well enough to move forward with the criminal process, and that Detective Davis' investigation led him to believe that such charges would be brought against Father in a timely manner.

{¶ 26} Regarding the child specifically, the court considered that W.C.H. was interviewed and "did appear to be somewhat more guarded regarding discussions involving his father than he was in discussions regarding others." The court also considered that the child acted "inappropriately affectionate" with Mother when the child kissed Mother's neck "all the way down," and that the child explained that such kissing was "just loving on her" in the same manner that Father did with W.C.H.

{¶ 27} Moreover, the juvenile court heard Father's own testimony, in which he denied the allegations against him. The court heard Father's explanation regarding why multiple people would be making allegations of rape and gross sexual imposition against him, and heard Father state that the allegations were not true. The juvenile court was in the best position to judge the credibility of Father's statements, and what impact those statements had on the court's understanding of whether or not Father engaged in sexual abuse.

{¶ 28} This evidence and testimony spoke directly to W.C.H.'s environment in terms of the relationship the child had with Father and what the child was exposed to while when in Father's exclusive care. While Father had not yet been convicted of sexually abusing K.A. or W.C.H., the law does not require the court to experiment with the child's welfare to see if the child will suffer great detriment or harm before finding the child dependent. The juvenile court's decision was based on clear and convincing evidence, and we find such decision supported by the manifest weight of that evidence. As such, the juvenile court's adjudication of dependency was proper, and Father's third assignment of error is overruled.

{¶ 29} Assignment of Error No. 1:

{¶ 30} THE COURT ERRED WHEN IT ADMITTED THREE WITNESS STATEMENTS

INTO EVIDENCE WHICH WERE HEARSAY WITHOUT ANY EXCEPTION.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE COURT ERRED WHEN IT ADMITTED THE WITNESS STATEMENT OF K.A. WITHOUT FIRST ESTABLISHING THAT THE WITNESS WAS COMPETENT TO TESTIFY.

{¶ 33} Given our disposition of Father's third assignment of error, and our express finding that the juvenile court's decision was supported by the manifest weight of the evidence even absent consideration of the three statements, we find Father's first and second assignments of error moot.

{¶ 34} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.